UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CHARLES RAY SCRUGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-00058 |
| | ) | Judge Sharp/Brown |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

To: The Honorable Kevin H. Sharp, Jr., Chief United States District Judge.

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner, denying plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423(d). For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 16) be **DENIED**, and the Commissioner's decision **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on April 3, 2012,[1] alleging a disability onset date of August 30, 2009.[2] Plaintiff claimed he was unable to work due to anxiety, hypertension, shortness of breath, and pain on the right side at his waist. (Doc. 12, p. 127) Plaintiff's application was denied initially on June 21, 2012, and upon reconsideration on July 16, 2012. Plaintiff requested a hearing before

---

[1] The procedural history that follows is adopted from the jurisdiction and procedural history section of the Administrative Law Judge's (ALJ) decision (Doc. 12, p. 23), unless indicated otherwise.

[2] References to page numbers in the administrative record (Doc. 12) are to the page numbers that appear in bold in the lower right corner of each page.

an ALJ on July 27, 2012. A hearing was held in Nashville on January 9, 2014 before ALJ Shannon Smith. Plaintiff was represented at the hearing by Teresa Wilson, a non-attorney representative. Vocational expert (VE) Chelsea Brown testified at the hearing. The ALJ entered an unfavorable decision on March 17, 2014 (Doc. 12, pp. 20-38), after which plaintiff filed a request with the Appeals Council on May 12, 2014 to review the ALJ's decision (Doc. 12, pp. 14-16). The Appeals Council denied plaintiff's request on August 11, 2015 (Doc. 12, pp. 1-6), whereupon the ALJ's decision became the final decision of the Commissioner.

Plaintiff brought this *pro se* action on October 9, 2015 (Doc. 1), following which he filed a motion for judgment on the administrative record on January 28, 2016 (Doc. 16). The Commissioner responded on February 24, 2016. (Doc. 17) Plaintiff did not reply. This matter is now properly before the court.

## II. EVIDENCE[3]

### A. Medical Evidence

The Hope Family Health (Hope) clinical records are before the court for the period December 23, 2009 to July 23, 2012, the period relevant to the issue before the court. (Doc. 12, pp. 194-211, 273-74) Of the ten Hope clinical records during this period, plaintiff presented for respiratory related problems once, *i.e.,* on September 16, 2010 when he was assessed as having bronchitis. (Doc. 12, pp. 196, 209) Despite the bronchitis assessment, plaintiff was in no apparent distress and, although he exhibited rales[4] on examination, he had no shortness of breath (SOB), wheezing, or increased effort in breathing. (Doc. 12, pp. 196, 209) On the other occasions during

---

[3] The excerpts of the administrative record below are those necessary to respond to plaintiff's motion for judgment on the administrative record. The remainder of the record is incorporated herein by reference.

[4] Rales – "a discontinuous sound . . . heard primarily during inhalation, called also *crackle*." *Dorland's Illustrated Medical Dictionary* 1576 (32nd ed. 2012)(italics in the original).

2

this period, plaintiff presented for "Right ↓ Flank pain," blood work, to see about having a "knot" removed from the back of his neck, to remove stitches, a swollen ear, to check his blood pressure, for his nerves and anxiety, and to present Certified Physician's Assistant (PAC) Amanda Perry with disability papers to complete. (Doc. 12, pp. 194-95, 197-99, 200-01, 204, 274)  Plaintiff was not reported to have exhibited SOB at any time during this 2yr. 7 mo. period (Doc. 12, pp. 194-95, 197-201), except on July 23, 2012, the day he gave his disability papers to PAC Perry (Doc. 12, p. 274). Where noted, the Hope clinical records, including the record for July 23, 2012, all reflect that plaintiff exhibited "[n]o increased effort in breathing," and that his lungs were clear to ausculation.[5] (Doc. 12, pp. 202-03, 205, 209-12)

Dr. Mark Josovitz, M.D., examined plaintiff on June 9, 2012. (Doc. 12, pp. 229-33)  Plaintiff represented that he was disabled due to shortness of breath, that nothing made it better, but that stress made it worse.  Dr. Josovitz reported the following:

> . . . . Upon examination of the patient, I find zero physical findings to corroborate with the subjective complaints.  Given the patient's reported history, physical findings, and additional data, I find the patient to have zero level of limitations in job-related activities and zero level of limitations in ADLs [activities of daily living] related to his above condition. . . .  The patient has no restrictions.  He could sit, stand and walk greater than five hours a day with frequent breaks. He can lift greater than 10 lbs in eight-hour day continuously more than five hours.  The patient can carry in an eight-hour day up to 10 lbs frequently more than five hours without restrictions.

(Doc. 10, p. 231)

Dr. Saul Juliao, M.D., completed a Disability Determination Service consultive analysis on June 20, 2012.  (Doc. 12, pp. 239-44)  He determined that plaintiff did not have a physical impairment singly, or in combination, and that whatever impairment he might have was "not

---

[5] Ausculation – "the act of listening for sounds within the body, chiefly for ascertaining the condition of the lungs . . . ." *Dorland's* at p. 180.

3

severe." (Doc. 12, pp. 239, 242) Dr. Juliao noted that the Hope clinical records showed "no chronic severe respiratory" medically determinable impairment, that the all-systems-examiner panelist – Dr. Josovitz – found "no limitations in ADLs or work related activities." (Doc. 12, p. 242) Dr. P. Stumb, M.D., affirmed Dr. Juliao's report on July 13, 2012. (Doc. 12, p. 264)

PAC Perry completed a medical source statement ("MSS) on July 23, 2012. (Doc. 12, pp. 265-70) PAC Perry assessed plaintiff with the following limitations/restrictions: 1) lifting and carrying – able to lift up to 20 lbs. occasionally, but never more than 20 lbs., and able to carry up to 10 lbs. occasionally, but never more than 10 lbs. (Doc. 12, p. 265); 2) sitting/standing/walking – able to sit 30 mins., stand 1 hr., and walk 10 mins. at a time without interruption, and able to sit 2 hrs., stand 2 hrs., and walk 1 hr. in an 8-hr. workday (Doc. 12, p. 266); 3) use of hands – able to use either hand occasionally to reach in any direction, handle, finger, feel, and push/pull (Doc. 12, p. 267); 4) use of feet – able to operate foot controls occasionally with either foot (Doc. 12, p. 267); 5) postural activities – able to climb stairs, ramps ladders, and scaffolds occasionally, but never balance, stoop, kneel, crouch, or crawl (Doc. 12, p. 268); 6) environmental limitations – able to operate motor vehicles occasionally, but never exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust odors, fumes, and pulmonary irritants, extreme cold, and vibrations, or more than moderate noise (Doc. 12, p. 269); 7) ADLs – able to perform all listed ADLs, except traveling without a companion, or walking a block at a reasonable pace on rough or uneven surfaces (Doc. 12, p. 270).

## B. Hearing Testimony

The VE provided the following testimony at the hearing in response to the ALJ's single hypothetical and subsequent questions:

> Q    I'd like you to assume an individual with the claimant's age, education, and past work experience . . . . In our first hypothetical

today, I would like you to assume an individual with no exertional limitations but one that needs to avoid concentrated exposure to pulmonary irritants as well as temperature extremes and humidity . . . .

. . .

Q	Would there be . . . work that such an individual could perform?

A	Yes, Your Honor. A person could work as a . . . dry cleaner helper . . . . A person could also work as a motor vehicle assembler . . . . A person could also work as a stuffer . . . .

. . .

Q	Just for my own reference and knowledge, with respect to the various limitations, let's start with the dry cleaner –

A	– helper.

Q	Your Honor, let's strike that job.

Q	Okay, I'm just thinking humidity and –

A	Yeah.

Q	Okay.

A	A person can work as a meat packer . . . .

Q	And that would not require somebody to be in a freezer?

A	No, it's – that would be a meat packer.

Q	Uh-huh.

A	It would be different.

Q	Okay.

A	So there's –

Q	Okay, and is your testimony consistent with the <u>DOT</u>?

A	Yes, Your Honor.

5

(Doc. 12, pp. 58-59)(underline in the original)

## III.  ANALYSIS

### A.  The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if he can show his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905.  Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014).  While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile.  *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

### B.  Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards.  42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374.  Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003).  The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion.  *Gayheart*, 710 F.3d at 374.

### C.  Claim of Error

6

## Whether the VE Erred in Her Assessment of
## Plaintiff's Ability to Work
## (Doc. 16, pp. 2-3 of 4)

Plaintiff asserts that the ALJ "relie[d] primarily upon the recommendation" of the VE in the decision, but he "disagrees with the determination of the [VE] on several points." The undersigned liberally construes the motion to allege that the VE's testimony was incorrect and, as such, her testimony constitutes reversible error in its own right.[6,7] The undersigned also liberally construes the motion to allege that, because the VE's testimony was erroneous, the ALJ erred in relying on that testimony.

Both of plaintiff's arguments are grounded in the notion that the VE's testimony did not consider the limitations/restrictions in the MSS. Thus, the initial question is whether the VE should have given deference to PAC Perry's opinion. The ALJ noted the following in her opinion regarding PAC Perry and the MSS:

> Care provider, Amanda Perry, PAC, provided a medical source statement for the claimant and concluded that the claimant could only lift occasionally, up to 20 pounds. She allowed no exposure to unprotected heights, vibrations or moving mechanical parts. The explanations contain references to shortness of breath, but the connection between shortness of breath and balancing or between shortness of breath and unprotected heights is not obvious to the undersigned. Further, the author is not an acceptable medical source. The opinion appears to have . . . been based on subjective reports of the claimant and is not supported by the medical records of the office visit this day, or by treatments from this provider's office (or any

---

[6] The undersigned is not aware of any authority that the VE herself can commit reversible error through her testimony, nor has plaintiff provided any law or argument in support of such a theory for relief. Nevertheless, the undersigned will address this argument in that context out of an abundance of caution.

[7] Plaintiff identified PAC Perry in the disability report as his primary care physician at Hope. (Doc. 12, p. 130)

other sources). This opinion is not given significant weight. . . .[8]

(Doc. 12, p. 30)

The regulations establish two categories of medical evidence: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Other sources" include physician's assistants such as PAC Perry. 20 C.F.R. § 404.1513(d)(1). Physician's assistants also are classified as "non-acceptable medical sources." *Noto v. Comm'r of Soc. Sec.*, 632 Fed.Appx. 243, 248 (6th Cir. 2015)(citing 20 C.F.R. § 404.1513(d)(1)). Although the opinions of "other sources," including "non-acceptable medical sources" such as PAC Perry, "cannot establish the existence of a medically determinable impairment, the information 'may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)(citing SSR 06-03P WL 2329939 *3 (SSA)). The opinion of a "non-acceptable medical source" is not entitled to any particular weight or deference – the ALJ has the discretion to assign such opinions any weight she feels appropriate based on the record. *Noto*, 632 Fed.Appx. at 248-49 (citing *Walters. v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)). However, the ALJ "should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that discussion of the evidence in the determination or decision allows a claimant and subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 2006 WL 2329939 * 6 (Aug 9, 2006). The extent to which a physician assistant's opinion is consistent with the record as a whole is a factor in determining how much weight to give that opinion. *Irvin v.*

---

[8] The undersigned notes for the record that PAC Perry stated in the MSS that plaintiff had an "abnormal PFT [pulmonary function test] on 7/23/12 – very severe restriction [with] improvement after Albuterol." The actual date of the examination was April 23, 2012. (Doc. 12, pp. 277-78) The ALJ addressed this test, and determined that it was not valid under the regulations "[w]ithout the administrator's attestation page regarding the claimant's efforts and validity of the testing . . . ." (Doc. 12, p. 26) Plaintiff does not allege, nor can it be liberally construed from his motion, that the ALJ erred in determining that the PFT was not a valid under the regulations. Because plaintiff does not mention the PFT in his motion at all, the undersigned will not address it here.

8

*Comm'r of Soc. Sec.*, 573 Fed.Appx. 498, 501 (6th Cir. 2014)(citing 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).

Although PAC Perry's opinion cannot establish the existence of a medically determinable impairment, the ALJ should have – and did – consider her opinion for the purpose of assessing the severity of plaintiff's alleged impairments, and the extent to which those alleged impairments might affect his ability to function. As noted above at pp. 7-8, the ALJ did not give PAC Perry's opinion significant weight because her opinion was not supported by the Hope clinical records, including the clinical record on the date she completed the MSS. As shown above at pp. 2-4, the ALJ's assessment that PAC Perry's opinion was not entitled to significant weight was supported by substantial evidence. To the extent that the limitations/restrictions in the MSS were not entitled to significant weight, the VE's testimony cannot be viewed as flawed because she did not give deference to those limitations/restrictions in her testimony.

As shown above, the VE's testimony was not flawed because she did not consider the limitations/restriction in the MSS. Consequently, neither of plaintiff's arguments constitutes grounds for the relief demanded, and it would be proper to terminate the inquiry at this point. Nevertheless, the Undersigned will address plaintiff's two arguments for the sake of completeness.

Turning to the first argument, plaintiff asserts initially that the VE's testimony did not take into consideration that he would be exposed to "extreme cold" as a meat packer and stuffer, and to "dust, odors, fumes, etcetera" as a vehicle assembler, limitations/restrictions set forth in the MSS. (Doc. 16, ¶¶ (2)-(3), p. 2 of 4) The ALJ's residual functional capacity (RFC) is quoted below in relevant part:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of 01 work at all exertional levels but with the following nonexertional limitations: <u>he must avoid concentrated exposure to</u>

9

<u>pulmonary irritants and to temperature extremes and humidity</u>. . . .

(Doc. 12, p. 27)(bold omitted, underline added)  As shown above, the ALJ's RFC assessment provides that plaintiff must avoid the environmental limitations/restrictions to which he refers. Thus, even assuming for the sake of argument that the VE's testimony were flawed, any error was harmless because the ALJ took those limitations/restrictions into consideration in the RFC.

Plaintiff asserts next that the VE's testimony did not take into consideration that he was unable to stand for more than 1 hr., a limitation/restriction that is – in his opinion – inconsistent with working as a meat packer, stuffer, or vehicle assembler.  As previously shown above at p. 5, the ALJ instructed the VE in her hypothetical to "assume an individual with no exertional limitations . . . ." The VE would have failed to comply with ALJ's instructions had she based her opinion on a 1 hr. standing limitation/restriction when she had been instructed otherwise. The VE is required to follow the ALJ's instructions.

Plaintiff's also asserts that "the job classifications recommended by the vocational expert are not consistent" with his "age, health or education."  (Doc. 16, ¶ (3), p. 2 of 4)  Plaintiff does not provide any factual allegations in support of this argument. At a minimum, this *pro se* plaintiff must at least make an effort to show that meat packer, stuffer, and vehicle assembler jobs – as characterized in the DOT – have age, health and education requirements that would have excluded plaintiff from doing those jobs.

The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's] behalf"). Consequently, this argument is waived. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").[9]

Plaintiff asserts further that the VE did not "give[]e great weight to [his] health in her determination of occupations . . . [he] could engage in . . . ." (Doc. 16, ¶ (4), p. 2 of 4) Once again, plaintiff misconstrues the VE's role. The VE testifies at the hearing in response to hypotheticals and questions posed to her by the ALJ, as well as questions asked by counsel. Simply put, the VE does not weigh a claimant's physical and/or mental ability to work – she simply reports what jobs are available based on the ALJ's hypothetical, as clarified through subsequent questioning by the ALJ and counsel.

Plaintiff's asserts next is that the VE did "[not][10] seem to consider that many manufacturing companies would not even consider an applicant without a high school diploma or equivalent" (Doc. 16, ¶ (4), p. 2 of 4), and that he is "limited in his capacity to perform meaningful work by . . . . anxiety /depression" (Doc. 16, p. 3 of 4). Here too, plaintiff fails to provide any factual allegations in support of these arguments and, as such, they are waived once again.

As shown above, plaintiff's argument that the VE's testimony in its own right constituted reversible error is without merit. The undersigned turns next plaintiff's second argument, *i.e.*, that the ALJ committed reversible error by relying on the VE's allegedly flawed testimony.

Social Security Ruling 00-4P instructs the ALJ to "identify and obtain a reasonable

---

[9] The undersigned is mindful of the fact that plaintiff is proceeding in this matter *pro se*. However, "[t]he less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts . . . ." *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008)(citation omitted).

[10] Plaintiff actually writes: "[T]he vocational expert does seem to consider . . . ." (Doc. 16, ¶ (4), p. 2 of 4) The Undersigned liberally construes that the omission of the word "not" included here in brackets was a typographical error.

explanation for any conflicts between occupational evidence provide by VEs or VSs [vocational specialists] and information in the . . . [DOT] . . . ." SSR 00-4P, 2000 WL 189704 at *1 (Dec. 4, 2000). However, it is settled in the Sixth Circuit that the ALJ's duty is satisfied if she asks the VE whether her testimony is consistent with the DOT. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 858 (6th Cir. 2010); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009). More particularly, the ALJ is not required to conduct an independent investigation into the VE's testimony to determine if her testimony is correct. *Lindsley*, 560 F.3d at 606.

The transcript of the hearing shows that the ALJ asked the VE the following question: "Okay, and is your testimony consistent with the DOT?" The VE responded, "Yes, Your Honor." (Doc. 12, pp. 58-59) This was all the ALJ was required to do under the regulations and the law to inoculate herself from error due to mistakes that the VE may have made in her testimony. In other words, there is no reversible error as it pertains to the ALJ's decision, even if that decision had been based on flawed testimony by the VE.

Plaintiff's claim of error is without merit for the reasons stated above.

## IV. CONCLUSION
## AND
## RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 16) be **DENIED**, and the Commissioner's decision **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*,

474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

 **ENTERED** this 29th day of September, 2016.

            /s/ Joe B. Brown
            Joe B. Brown
            United States Magistrate Judge